CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

SLOAN HEFFRON (CABN 285347)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6730
Fax: (415) 436-7027
Sloan.heffron@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUBEN SOTO,<br><br>Defendant. | CASE NOS. 26-CR-00284-MMC<br>18-CR-00442-MMC<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Date: October 7, 2026<br>Time: 2:15 p.m.<br>The Honorable Maxine M. Chesney |

## I. INTRODUCTION

On July 15, 2026, defendant Ruben Soto pleaded guilty to a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(viii) – Possession with Intent to Distribute 50 Grams and More of a Mixture and Substance Containing Methamphetamine. Dkt. 9 (Plea Agreement) (the "2026 Case").[1] On the same date, Soto also admitted the two violations of his supervised release alleged in the Petition for Warrant for Person Under Supervision filed in his prior federal case. *See* Case No. 18-CR-00442-MMC (the "2018 Case") at dkts. 29 ("Form 12") and 39 (Minute Order).

Charges One and Two of the Form 12 arise from a December 2026 incident in which Soto led

[1] Unless otherwise noted, all references to the "docket" refer to the record in Case No. 26-CR-00284-MMC (the "2026 Case").

police on a vehicle pursuit and crashed into a concrete barrier before being taken into custody. During the ensuing search of Soto's vehicle, police recovered methamphetamine, fentanyl, and heroin, all in quantities and packaging consistent with an intent to distribute. This same conduct forms the basis of the sole count of the Information in the 2026 Case.

For the reasons set forth below, the United States respectfully recommends that the Court sentence Soto to 60 months' imprisonment and 48 months' supervised release in the 2026 Case, and requests that the Court order that the $1,275.80 referenced in the Information and the Plea Agreement be forfeited. Dkt. 1-1 (Information) at 2; Plea Agreement ¶ 11. The United States further recommends that the Court sentence Soto to 21 months' imprisonment in the 2018 Case, to run concurrently to any custodial sentence imposed in the 2026 Case. Because Soto will be on supervised release in the 2026 Case, the government recommends that the Court not impose any further term of supervised release in the 2018 Case.

## II. BACKGROUND AND OFFENSE CONDUCT

In August 2019, this Court sentenced Soto to 72 months' imprisonment and 48 months of supervised release after Soto pleaded guilty to Possession with Intent to Distribute Methamphetamine (21 U.S.C. § 841(a)(1) and (b)(1)(C)) and Carrying/Possessing a Firearm in Connection with a Drug Trafficking Crime (18 U.S.C. § 924(c)(1)(A)) in the 2018 Case. Dkt. 10 (Presentence Investigation Report or "PSR") at ¶ 48. On March 20, 2024, following his release from custody, Soto began his term of supervised release. Form 12 at 1.

On December 19, 2025, around 7:59 p.m., uniformed Santa Rosa Police Department ("SRPD") officers were working at a DUI checkpoint in Santa Rosa. PSR ¶ 6. One officer observed a red Honda CR-V (the "Honda") approach the screening line and pull over. *Id.*; Plea Agreement ¶ 2. The driver, later identified as Ruben Soto, then exited the driver's seat of the Honda, walked to the rear of the vehicle, and returned to the front driver's seat before pulling back into the screening line. PSR ¶ 6. The officer contacted Soto, who was the driver and sole occupant of the Honda, and observed that he had small, pinpoint pupils. *Id.* Eventually, the officer directed Soto to pull over into the secondary screening area for further evaluation. *Id.* Soto drove forward toward the screening area, where he briefly stopped before suddenly driving away. *Id.* Two officers got into a marked patrol vehicle and

drove after Soto with their siren and emergency lights activated. *Id.* ¶ 7.

Soto led the officers on a vehicle pursuit that lasted around 13 minutes and spanned approximately 16.2 miles. During the pursuit, Soto ran a red light, weaved through traffic, drove on the wrong side of the road, nearly caused several collisions, and reached speeds of up to approximately 100 miles per hour. *Id.* ¶¶ 7-10. The pursuit ended when Soto crashed the Honda into a concrete barrier on a highway off-ramp, disabling the vehicle. *Id.* ¶ 10.

Officers approached the Honda on foot and ordered Soto to exit the vehicle. *Id.* ¶ 11. Soto repeatedly yelled for the officers to shoot and kill him, and that he would rather die than return to prison. *Id.* Soto also told the officers that he was in possession of drugs and was on federal probation. *Id.* He eventually complied with commands to exit the vehicle and was taken into custody. *Id.* ¶ 12. While being assessed by paramedics on scene, Soto spontaneously stated that he was under the influence of methamphetamine and fentanyl. *Id.*

Police searched the disabled Honda. *Id.* ¶ 13. On the front driver's side floorboard, an officer found Soto's wallet, which contained $1,275.80 in U.S. Currency. Plea Agreement ¶ 2. On the driver's side of the backseat, an officer found a black backpack. PSR ¶ 13. Inside the black backpack, the officer found a plastic bag containing 228.8 grams (gross weight) of methamphetamine, another plastic bag containing brown heroin and numerous individually wrapped bindles of fentanyl, an additional plastic bag containing brown heroin, four additional bindles of fentanyl, a digital scale, and several small plastic baggies. *Id.*; Plea Agreement ¶ 2.[2] In the Plea Agreement, the parties stipulated that Soto was responsible for at least 525 kilograms of Converted Drug Weight, as defined in the U.S. Sentencing Guidelines. Plea Agreement ¶ 2.

---

[2] The incident reports did not specify the net weights of any of the recovered substances. The incident reports also provided a combined gross weight (76.6 grams) for the heroin and fentanyl that were found together in the second plastic bag, a separate gross weight (34.4 grams) for the heroin found in the third plastic bag, and a separate gross weight (17.7 grams) for the additional four bindles of fentanyl. As noted in the PSR, because the parties reached a pre-indictment resolution in this case, the government did not pursue laboratory testing of the drugs. PSR ¶ 14. The net weights of the substances listed in paragraph two of the Plea Agreement reflect estimates that were agreed to by the parties and were extrapolated from the gross weights of the recovered substances described in the incident reports.

## III. SENTENCING GUIDELINES CALCULATIONS

Case No. 26-CR-00284-MMC

As an initial matter, the government agrees with U.S. Probation's finding that the Guidelines calculation contained in the Plea Agreement is incorrect because it failed to include a two-level upward adjustment for Reckless Endangerment During Flight, pursuant to U.S.S.G. §3C1.2. PSR ¶ 3. Under the facts of this case, that adjustment should have been included in the Guidelines. Undersigned counsel apologizes for any confusion caused by this omission.

The government agrees with U.S. Probation's calculations as to the applicable Sentencing Guidelines. *Id.* ¶¶ 3, 19-28. Specifically, the government agrees that the appropriate Guidelines in this case are under U.S.S.G. §2D1.1(a)(5) and (c)(7), and that Soto is responsible for a Converted Drug Weight of 525 kilograms, resulting in a Base Offense Level of 26. *Id.* ¶ 19. The government further agrees with Probation that the Total Offense Level is 25. *Id.* ¶ 25. This Total Offense Level accounts for a two-level increase under U.S.S.G. §3C1.2 for Reckless Endangerment During Flight, as well as a three-level reduction pursuant to U.S.S.G. §3E1.1(a)-(b) for acceptance of responsibility. *Id.* ¶¶ 23-28. The government agrees that Soto's 19 criminal history points place him within Criminal History Category VI. *Id.* ¶¶ 39-41. An Offense Level of 25 under Criminal History Category VI yields an advisory sentencing range of 110-137 months' imprisonment. U.S. Probation recommends that in the 2026 Case, the Court sentence Soto to a custodial term of 60 months, concurrent to any term of imprisonment imposed in the 2018 Case. *Id.* at p. 28. Probation further recommends that the Court sentence Soto to 48 months' supervised release in the 2026 Case. *Id.*

While the inclusion of the adjustment pursuant to U.S.S.G. §3C1.2 results in a higher Total Offense Level than that contemplated in the Plea Agreement, the government continues to recommend the same sentence it promised to recommend as a condition of the Plea Agreement: 60 months in custody and 48 months of supervised release, concurrent to any custodial sentence imposed in the 2018 Case. Plea Agreement ¶¶ 15-16.

Case No. 18-CR-00442-MMC

The government also agrees with U.S. Probation's Guidelines calculations concerning the supervised release violations in the 2018 Case, as set forth in the Form 12. *See* Form 12 at 4. As noted,

Soto admitted to both Charges One and Two. In terms of sentencing exposure, the most serious of these violations is Charge One: that Soto committed a new federal, state, or local crime by, among other things, possessing controlled substances for sale. Charge One is a Grade B violation under U.S.S.G. §7B1.1(a)(2). The government agrees with Probation's finding that Soto fell under Criminal History Category VI at the time he was originally sentenced in the 2018 Case, and that the applicable Guidelines Range is therefore 21-27 months in custody. *Id.*

**IV. SECTION 3553(a) FACTORS**

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends that, in the 2026 Case, the Court sentence Soto to a term of 60 months' imprisonment followed by 48 months of supervised release, to include each of the terms and conditions recommended by U.S. Probation. PSR at pp. 28-31. In the 2018 Case, the government recommends that the Court revoke Soto's supervised release and sentence him to 21 months' imprisonment, concurrent to the 2026 Case, with no term of supervision to follow.

While sentencing courts must consider each of the factors set forth in section 3553(a), the following warrant further discussion in these cases: the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1); the history and characteristics of the defendant, 18 U.S.C. § 3553(a)(1); the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, 18 U.S.C. § 3553(a)(2)(A);[3] and the need for the sentence imposed to provide the defendant with needed medical care in the most effective manner, 18 U.S.C. § 3553(a)(2)(D).

The nature and circumstances of the 2026 Case justify a 60-month custodial sentence. Here, Soto possessed methamphetamine, fentanyl, and heroin with the intent to distribute each of these substances. He did so while on supervised release for his federal drug trafficking conviction in the 2018

[3] 18 U.S.C. §3583(e) identifies the options available to a district court in revoking or modifying the conditions of a defendant's term of supervised release, and directs courts to consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." 18 U.S.C. § 3583(e). Notably, it does not include section 3553(a)(2)(A), and the Supreme Court recently held that a district court revoking a term of supervised release may not consider the factors listed in section 3553(a)(2)(A). *Esteras v. United States*, 606 U.S. 185, 204 (2025). Accordingly, with respect solely to the 2018 Case, the United States respectfully requests that the Court not consider the factors listed in section 3553(a)(2)(A).

Case. And if selling these drugs was not enough, Soto took things a step further by leading police on a long and dangerous pursuit, all while under the influence of drugs himself. This situation was of his own making and presented an extraordinary risk to himself, the officers, and the public.

As to the history and characteristics of the defendant: Soto is a recidivist drug dealer who, between 2000 and 2019, was convicted of felony offenses in eight separate cases. PSR ¶¶ 31, 32 (later reduced to a misdemeanor), 33, 34, 35, 36, 37, 38. Three of these eight convictions—those in 2004, 2007, and 2019—are for possession of a controlled substance for sale. *Id.* ¶¶ 32, 34, 38. Now 45 years old, Soto has spent the majority of his adult life either in custody or on some form of court-ordered supervision. This criminal history alone underscores the fact that Soto poses a danger to the community and that a 60-month sentence is warranted.

On the other hand, Soto's background includes significant mitigating factors. As noted in the PSR, he first used methamphetamine at age 21 and proceeded to use it daily up until his arrest in the 2018 Case, when he was 37 years old. PSR ¶ 75. Remarkably, after beginning supervised release in March 2024, Soto appeared to have overcome his seemingly intractable addiction. He earned an honest living by working as a chef, and things appeared headed in the right direction. As Probation observed, prior to his December 2026 arrest, "Mr. Soto was performing very well on supervised release." *Id.* at p. 28. After beginning supervised release, he "secured his own residence, held consistent verifiable employment, and maintained his sobriety." *Id*. Unfortunately, he experienced several devastating setbacks: in November 2024, Soto's father—with whom he was close—died from organ failure. *Id.* ¶ 66. Six months later, Soto's oldest daughter died from a drug overdose, leaving Soto's six-month-old grandson without a mother. *Id.* ¶ 37. The death of his daughter precipitated Soto's relapse on methamphetamine, and he eventually reverted to his old ways. *Id*. As evidenced by the present case, this included selling drugs to support his own addiction.

The government also recognizes that even prior to the passing of his father and daughter, Soto experienced considerable trauma and adversity. His childhood was marred by neglect from his mother, who suffered from drug addiction and severe mental illness, and by the severe physical abuse Soto experienced at the hands of his father. *Id*. ¶ 60. Soto dealt with homelessness, observed the violent deaths of several friends, experienced the loss of a close friend from AIDS, and witnessed his mother's

continued deterioration as a result of chronic drug use. *Id.* ¶ 61. Tellingly, on the Adverse Childhood Experiences ("ACE") assessment, Soto scored an 8 out of 10, suggesting that the trauma he experienced during childhood places him at heightened risk for serious disease or other physical or behavioral health problems. *Id.* ¶ 73. Additionally, during PSR interviews, Soto recounted his own protracted struggles with drug addiction and his mental health. *Id.* ¶¶ 73, 76. These struggles manifested in the present case, in which Soto repeatedly urged police officers to kill him. This is clearly not the behavior of someone in a healthy frame of mind. This history is mitigating, and the government has taken it into account in recommending a 60-month sentence in the 2026 Case and concurrent time in the 2018 Case.

A significant period of incarceration is also necessary to account for the seriousness of the offense, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. Soto's conduct in this case and his history of recidivism underscore the need to protect the community from further crimes of this defendant. A 60-month custodial sentence would represent the second longest term of imprisonment handed down to Soto, with the longest being the 72-month term this Court originally imposed in the 2018 Case. The proposed sentence represents a significant term of incarceration that is necessary to account for the gravity of Soto's actions and adequately punish his behavior while simultaneously accounting for the significant mitigation discussed above.

Finally, the Court should impose a sentence that accounts for the need to provide this defendant with needed medical care in the most effective manner. The government believes that a 60-month term of imprisonment will advance this goal, as it will hopefully provide Soto with the opportunity to participate in Bureau of Prisons' Residential Drug Abuse Treatment Program ("RDAP"). It is undeniable that Soto's longstanding drug addiction fuels his criminal activities, and the 2026 Case is merely the most recent example of this causal relationship. While this case represents a significant setback, the government recognizes that Soto is fully capable of both achieving and exceeding the progress he experienced during his first 14 months on supervised release. Soto himself has expressed a desire to participate in treatment. PSR ¶ 69. And U.S. Probation appropriately suggests that the Court recommend that Soto participate in RDAP. *Id.* at p. 28. Recognizing that the decision of whether a defendant participates in RDAP is ultimately left to BOP and to the defendant, the government joins Probation in requesting that the Court recommend Soto participate in the program.

**V. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence Ruben Soto to a term of 60 months' imprisonment in the 2026 Case and to a concurrent term of 21 months' imprisonment in the 2018 Case. The government further requests that the Court impose a 48-month term of supervised release in the 2026 Case, with each of the terms of conditions set forth in the Presentence Report.

DATED: September 30, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/s/
SLOAN HEFFRON
Assistant United States Attorney